IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ORDER TAKER, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 1:11-CV-3867-RWS |
| DEDERT CORPORATION, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## ORDER

This case comes before the Court on Defendant's Motion to Dismiss or

for Partial Judgment on the Pleadings [35], Plaintiff's Motion to Compel

Discovery [43], Defendant's Motion to Quash Subpoena to Arch Chemicals,

Inc. [47], and Defendant's Motion for Summary Judgment [67].  After

reviewing the record, the Court enters the following Order.

## Background

This case arises out of an alleged oral agreement between Plaintiff and

Defendant governing commissions Plaintiff was to earn on sales of spin flash

dryers ("SFDs").  Plaintiff initiated this litigation by filing a Complaint in this

Court, raising claims for breach of contract (Count I), quantum meruit (Count

AO 72A
(Rev.8/82)

II), prejudgment interest (Count III), and attorneys fees and litigation expenses

(Count IV).  (See generally Compl., Dkt. [1].)  In the Complaint, Plaintiff

alleges that Defendant breached its agreement with Plaintiff by failing to pay

Plaintiff commissions on two sales of SFDs to Arch Chemicals, Inc.

("Arch")—the first of which occurred on November 11, 2010 and the second of

which took place on February 14, 2011.  (Id. ¶¶ 20-21, 23-25.)  Defendant now

moves for summary judgment on each of Plaintiff's claims.  (See generally

Def.'s Mot. for Summ. J., Dkt. [67].)  The following facts are undisputed.[1]

---

[1] These facts are taken from Defendant's Statement of Material Facts As To
Which There Is No Genuine Issue To Be Tried & Theories of Recovery ("Def.'s
Statement of Material Facts" or "Def.'s SMF"), Dkt. [67-2].  Plaintiff has failed to
create a genuine issue as to any of these facts.  Under the local rules of this Court, a
respondent to a summary judgment motion must include, with his responsive brief, a
response to the movant's statement of undisputed facts.  LR 56.1(B)(2)(a), NDGa.
"This response shall contain individually numbered, concise, nonargumentative
responses corresponding to each of the movant's numbered undisputed facts."  LR
56.1(B)(2)(a)(1), NDGa.  "This Court will deem each of the movant's facts as
admitted unless the respondent: (i) directly refutes the movant's fact with concise
responses supported by citations to evidence (including page or paragraph number);
(ii) states a valid objection to the admissibility of the movant's fact; or (iii) points out
that the movant's citation does not support the movant's fact or that the movant's fact
is not material or otherwise has failed to comply with the provisions set out in LR
56.1(B)(1)."  LR 56.1(B)(2)(a)(2), NDGa (emphasis added).

    Plaintiff's response to Defendant's Statement of Material Facts (Dkt. [71] at 9-
23) wholly fails to comply with these Rules, as none of the responses contains a
citation to evidence in the record.  Instead, following Plaintiff's purported responses to
Defendant's facts, Plaintiff provides a summary of various depositions and affidavits

2

Plaintiff Order Taker, Inc. ("Plaintiff" or "Order Taker") is a company

founded by Roger Lee ("Lee") in Georgia in 2005.  (Def.'s SMF, Dkt. [67-2] ¶

1.)  Lee is the sole officer and shareholder of Order Taker.  (Id.)  Guy Lonergan

("Lonergan") became the president of Dedert Corporation ("Defendant" or

"Dedert") on July 1, 2005 and has remained in that position since that time.  (Id.

¶ 4.)  Dedert changed its name to Anhydro, Inc. ("Anhydro") in 2007 and

changed its name back to Dedert in 2010.  (Id. ¶¶ 2, 4.)

---

in the record.  This is not proper under the Local Rules and, as Defendant argues,
"makes it difficult, if not impossible, to determine the basis for each response."
(Def.'s Reply Br. in Supp. of Mot. for Summ. J. ("Def.'s Reply"), Dkt. [74] at 3.)
Accordingly, Plaintiff has failed to create a genuine dispute as to any fact asserted by
Defendant.

        Plaintiff's own Statement of Material Facts (Dkt. [71] at 2-23 of 27) similarly
fails to comply with the Local Rules and fails to create a genuine dispute as to any
material fact.  Under Rule 56.1(B)(1) and (B)(2)(b), a respondent's statement of
additional facts "must be numbered separately and supported by a citation to evidence
proving such fact."  LR 56.1(B)(1).  "The court will not consider any fact: (a) not
supported by a citation to evidence (including page and paragraph number) . . . [or] (c)
stated as an issue or legal conclusion . . . ."  LR 56.1(B)(1).  In this case, each of
Plaintiff's statements of fact is phrased as a legal issue, in "whether or not" format,
with no citation to evidence.  Again, Plaintiff provides a summary of various
depositions and affidavits in the record at the conclusion of its statement of facts.  This
is insufficient under the Local Rules.  (The Court notes that even if it were to consider
Plaintiff's response to Defendant's Statement of Material Facts or Plaintiff's own
Statement of Material Facts, it would not change the result in this case, as neither of
these submissions creates a dispute of fact that is material to the issues before the
Court.)

AO 72A
(Rev.8/82)

In July 2005, Lee entered into an oral sales agent representative agreement with Stewart Gibson ("Gibson"), an engineer at Dedert (formerly Anhyrdro), for a sales agent position with Anhydro related to sales to Arch (the "Lee-Gibson Agreement"). (Id. ¶¶ 3, 23.) Gibson reported to Lonergan and never had any authority to set prices or commissions without Lonergan's approval, or to enter into sales agent representative agreements. (Id. ¶¶ 13-15.) On the contrary, Gibson was required to discuss any commissions for proposed outside sales agents with Lonergan. (Id. ¶ 16.) Lonergan was the only person at Dedert with authority to enter into a sales representation agreement and was the only person with final authority to approve sales proposals. (Id. ¶¶ 16-17.) Lee was aware in July 2005 that Gibson lacked authority to enter into a commission agreement without Lonergan's approval, and he knew that Lonergan would have to confirm the Lee-Gibson Agreement. (Id. ¶ 27.) No written contract ever was concluded between Order Taker (or Lee) and Dedert (or Anhydro). (Id. ¶ 21.)

The oral Lee-Gibson Agreement had no terms other than a commission rate of three percent. (Id. ¶¶ 29, 32.) It had "no set start date, expiration date, termination provision, confidentiality provision, or non-compete provision."

AO 72A
(Rev.8/82)

(<u>Id.</u> ¶ 29.)  Nor did it contemplate any specific duties or responsibilities that Lee was to have, other than to sell.  (<u>Id.</u> ¶ 32.)  "The entire Lee-Gibson Agreement boiled down to '3 percent, go sell.'"  (<u>Id.</u>)  Gibson agreed, however, to increase the commission rate to five percent under certain circumstances.  (<u>Id.</u> ¶ 34.)

"The Arch lead came directly to an employee at Dedert, John Betts ('Betts')."  (<u>Id.</u> ¶ 37.)  Betts received a call from a representative of Arch; participated in a conference call with five Arch representatives, during which he discussed the different dryer types, including SFDs; and then passed the lead on to Gibson.  (<u>Id.</u>)  Gibson asked Lee to follow up on the lead, and he provided Lee with a form specifically for SFDs, which was used to obtain technical data from Arch.  (<u>Id.</u> ¶ 38.)  On July 25, 2005, another engineer at Dedert, David Augustine ("Augustine"), prepared a proposal for Arch related to SFDs, which Lee forwarded to Arch.  (<u>Id.</u> ¶ 39.)  Augustine also prepared a technical summary regarding the differences between SFDs and another type of dryer. (<u>Id.</u>)  Lee did not prepare the costing spreadsheets for the possible sales to Arch, nor did he "handle the quotes, budgets, design, or technical or commercial components of the Arch lead."  (<u>Id.</u> ¶ 41.)  "Although he communicated with Arch, he did not handle all of the communications with Arch."  (<u>Id.</u>)  Lee did

AO 72A
(Rev.8/82)

not set up or coordinate the pilot testing of the SFDs at Arch, which testing was essential to securing a sale to Arch.  (Id. ¶ 42.)

"Lonergan did not know anything about Lee until the end of 2008."  (Id. ¶ 55.)  Lonergan first heard about the Lee-Gibson Agreement at the end of 2008, when another Dedert representative, Al Lorig ("Lorig"), came to Lonergan's office after finding out that a commission was being included for Lee and asked Lonergan who Lee was and what his involvement was.  (Id. ¶ 56.)  Lonergan never accepted Lee's services or ratified the Lee-Gibson Agreement.  (Id. ¶ 57.)  During a meeting in February 2009, Lonergan told Lee he would not ratify the Lee-Gibson Agreement but told Lee that Dedert would be willing to enter into a standard sales agent agreement to resolve any dispute with Lee.  (Id. ¶ 58.)  Lee repeatedly rejected the standard sales agent agreement.  (Id. ¶ 59.)

Lonergan terminated any role Lee believed he had under the Lee-Gibson agreement, effective May 20, 2009, by termination letter to Lee dated April 20, 2009.  (Id. ¶ 60.)  "Lonergan proposed that Dedert would pay Lee commission under the Dedert standard sliding scale sales agreement for a period of ninety (90) days after the effective date of his termination for any open sales in an

AO 72A
(Rev.8/82)

effort to resolve the dispute with Lee." (Id. ¶ 61.)  "Lonergan thereafter offered

to extend that date through the end of 2009 but Lee again refused to enter into

any agreement with Dedert." (Id.)

"No sales were made to Arch in 2009." (Id.)  Apart from fewer than ten

conversations with Arch representatives, Lee was not involved in the selling

process following his termination, and Lonergan advised Arch that it should no

longer communicate with Lee. (Id. ¶¶ 62, 64, 65.)  Following his termination,

Lee did not represent himself to Arch as Dedert's sales representative, nor take

any other specific action to make the sales to Arch happen. (Id. ¶ 64.)  The first

sale of SFDs to Arch alleged in the Complaint took place on November 11,

2010—sixteen months after Lee's termination. (Id. ¶ 64.)  The second sale took

place on February 14, 2011. (Id.)  Plaintiff alleges in this action that he is

entitled to commissions on these sales.

## Discussion

**I.    Defendant's Motion for Summary Judgment [67]**

A.    Summary Judgment Legal Standard

Federal Rule of Civil Procedure 56 requires that summary judgment be

granted "if the movant shows that there is no genuine dispute as to any material

AO 72A
(Rev.8/82)

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a).  "The moving party bears 'the initial responsibility of informing the . . .

court of the basis for its motion, and identifying those portions of the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, which it believes demonstrate the absence of a genuine issue

of material fact.'"  Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259

(11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)

(internal quotations omitted)).  Where the moving party makes such a showing,

the burden shifts to the non-movant, who must go beyond the pleadings and

present affirmative evidence to show that a genuine issue of material fact does

exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257  (1986).

The applicable substantive law identifies which facts are material.  Id. at

248.  A fact is not material if a dispute over that fact will not affect the outcome

of the suit under the governing law.  Id.  An issue is genuine when the evidence

is such that a reasonable jury could return a verdict for the non-moving party.

Id. at 249-50.

Finally, in resolving a motion for summary judgment, the court must

view all evidence and draw all reasonable inferences in the light most favorable

AO 72A
(Rev.8/82)

to the non-moving party.  Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296

(11th Cir. 2002).  But, the court is bound only to draw those inferences which

are reasonable.  "Where the record taken as a whole could not lead a rational

trier of fact to find for the non-moving party, there is no genuine issue for trial."

Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

"If the evidence is merely colorable, or is not significantly probative, summary

judgment may be granted."  Anderson, 477 U.S. at 249-50 (internal citations

omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met

its burden under Rule 56(a), the nonmoving party "must do more than simply

show there is some metaphysical doubt as to the material facts").

> B.     Analysis

As stated in the Background section, supra, Plaintiff raises claims in the

Complaint for breach of contract (Count I) and quantum meruit (Count II) and

for prejudgment interest (Count III) and expenses of litigation (Count IV).

(Compl., Dkt. [1].)  Utilizing the legal standard set out in sub-part A, supra, the

Court considers Defendant's Motion for Summary Judgment as to each claim.

AO 72A
(Rev.8/82)

### 1.    Breach of Contract (Count I)

Defendant moves for summary judgment on Plaintiff's claim for breach

of contract on two grounds.  First, Defendant contends that the alleged oral

contract falls within the statute of frauds as a contract not to be performed

within one year,[2] and therefore is unenforceable because it is not in a writing

signed by Defendant, the party to be charged.  (Def.'s Br. in Supp. of Mot. for

Summ. J. ("Def.'s Br."), Dkt. [67-1] at 9 (citing O.C.G.A. § 13-5-30(5)).)

Second, Defendant contends that even if a valid contract was entered into, it

was a contract for an indefinite period and therefore terminable at will.  (Id. at

9-11.)  In response to these arguments, Plaintiff argues that the doctrine of part

performance takes the agreement out of the statute of frauds; Plaintiff does not

address Defendant's argument that the contract was terminable at will, thus

precluding Plaintiff from asserting a claim for breach following his termination.

(Pl.'s Br. in Resp. to Def.'s Mot. for Summ. J ("Pl.'s Resp."), Dkt. [71] at 25.)

---

[2] In support of its argument that the alleged oral agreement was a contract not
to be performed within one year, Defendant points out that the alleged breaches of
which Plaintiff complains did not take place until November 11, 2010 and February
14, 2011, more than one year after the agreement allegedly was entered into (in July
2005).  (Def.'s Br., Dkt. [67-1] at 9.)

AO 72A
(Rev.8/82)

The Court agrees with Defendant that the oral contract alleged by Plaintiff was a contract for employment for an indefinite term, therefore terminable at the will of either party.  "[U]nder Georgia law, an oral promise as to an employment contract for an indefinite period of time is not enforceable." Pickle Logging, Inc. v. Georgia Pacific Corp., 623 S.E.2d 227, 229 (Ga. Ct. App. 2005) (internal quotes and citation omitted).  "Such contract is terminable at will, and violation of its terms will not support a breach of contract claim." Id.  "Moreover, assumptions about the duration of a terminable-at-will contract are not enforceable."  Id.  See also Jones v. Destiny Indus., Inc., 485 S.E.2d 225, 227 (Ga. Ct. App. 1997) ("An indefinite hiring may be terminated at the will of the parties (O.C.G.A. § 34-7-1); thus, a promise of employment for an indefinite term is insufficient to support a cause of action for breach of an employment contract.").

In this case, the undisputed evidence shows that the alleged contract did not have a definite duration and thus was terminable at will.  Plaintiff, therefore, cannot prevail on a claim for breach of contract based on Defendant's failure to pay him commissions following his termination.  Defendant's Motion for Summary Judgment [67] is **GRANTED** as to Count I.

### 2.   *Quantum Meruit (Count II)*

Defendant moves for summary judgment on Plaintiff's claim for quantum

meruit on grounds that Plaintiff has failed to establish certain essential elements

of the claim—namely, that (1) Defendant requested or knowingly accepted

Plaintiff's services; (2) that Plaintiff expected to be paid when he rendered

those services; and, finally, (3) that Plaintiff was the "procuring cause" of the

sales to Arch.  (Def.'s Br., Dkt. [67-1] at 13-17.)  Plaintiff does not respond to

these arguments but instead recites general principles on the theory of quantum

meruit.  (See Pl.'s Resp., Dkt. [71] at 25 ("Assuming the verbal contract is not

taken out of the Statute of Frauds, one may recover under Quantum Meruit

permit [sic] a party who may be unable to recover under contract to nonetheless

receive compensation for services rendered. . . .  One rendering valuable

services to another is entitled to recover in quantum meruit, and the implication

is that the employer will paid [sic] for the services rendered." (citations

omitted)).)

The Court agrees with Defendant that Plaintiff's claim for quantum

meruit fails as a matter of law.  The essential elements of liability under a

quantum meruit theory are: "(1) the provider performed as agent services

AO 72A
(Rev.8/82)

valuable to the recipient; (2) either at the request of the recipient or knowingly

accepted by the recipient; (3) the recipient's receipt of which without

compensating the provider would be unjust; and (4) provider's expectation of

compensation at the time of rendition of services."  Hollifield v. Monte Vista

Biblical Gardens, Inc., 553 S.E.2d 662, 668 (Ga. Ct. App. 2001).  Moreover, a

sales agent may not recover commissions under a quantum meruit theory

following the termination of her sales agent agreement unless the agent shows

she was the "procuring cause of the sale."  Pittard Mfg. Co. v. Mitsubishi Int'l

Corp., 384 S.E.2d 423, 424 (Ga. Ct. App. 1989); Doyal & Assocs., Inc. v.

Wilma SE, Inc., 332 S.E.2d 24, 26 (Ga. Ct. App. 1985); Foshee v. Harris, 317

S.E.2d 548, 550 (Ga. Ct. App. 1984).  To be found the procuring cause of the

sale, "it must be established that the negotiations were still pending between the

prospective purchaser and the one seeking the commission and that the owner

was aware that there were pending negotiations when it consummated the sale."

Pittard, 384 S.E.2d at 424.  "Finding the prospect and attempting to make the

sale are not sufficient, in law, to entitle an agent to a commission; to earn the

commission, he must be the procuring cause of the sale."  Id.

13

The Court agrees with Defendant that Plaintiff was not the procuring cause of the two sales of SFDs to Arch.  Plaintiff was terminated from any role he may have had under the Lee-Gibson Agreement effective May 20, 2009, and Lonergan instructed Arch not to communicate with Lee following his termination.  The first sale to Arch did not occur until November 11, 2010, and the second sale took place on February 14, 2011.  There is no evidence that negotiations between Lee and Arch were taking place at the time these sales occurred, much less negotiations of which Defendant was aware, or that Lee took any action following his termination to make the sales happen.  Moreover, the evidence shows that Lee did not discover the Arch lead in the first instance, which lead instead came directly to a Dedert employee.  Plaintiff has failed to put forward evidence to rebut Defendant's showing that Plaintiff was not the procuring cause of the Arch sales.  Accordingly, Plaintiff is not entitled to recover commissions on these sales under a quantum meruit theory. Defendant's Motion for Summary Judgment is **GRANTED** on Count II.

> 3.    *Prejudgment Interest (Count III) and Expenses of Litigation (Count IV)*

AO 72A
(Rev.8/82)

Plaintiff's claims for prejudgment interest and expenses of litigation, pursuant to O.C.G.A. § 13-6-11, are derivative of Plaintiff's substantive claims for breach of contract and quantum meruit.  Because Plaintiff's claims for breach of contract and quantum meruit fail as a matter of law, Plaintiff is not entitled to prejudgment interest or attorney's fees or expenses of litigation. Wilkinson Homes, Inc. v. Stewart Title Guar. Co., 610 S.E.2d 187, 193 (Ga. Ct. App. 2005); United Cos. Lending Corp. v. Peacock, 475 S.E.2d 601, 602 (Ga. Ct. App. 1996).  Defendant's Motion for Summary Judgment is **GRANTED** on Counts III and IV.

II.     **Defendant's Motion to Dismiss or for Partial Judgment on the Pleadings [35], Plaintiff's Motion to Compel Discovery [43], and Defendant's Motion to Quash Subpoena to Arch Chemicals, Inc. [47]**

In light of the Court's ruling in Part I, supra, granting Defendant's Motion for Summary Judgment, Defendant's Motion to Dismiss or for Partial Judgment on the Pleadings [35], Plaintiff's Motion to Compel Discovery [43], and Defendant's Motion to Quash Subpoena to Arch Chemicals, Inc. [47] are **DENIED as moot**.

15

AO 72A
(Rev.8/82)

## Conclusion

In accordance with the foregoing, Defendant's Motion for Summary Judgment [67] is **GRANTED**.  Defendant's Motion to Dismiss or for Partial Judgment on the Pleadings [35] is **DENIED as moot**.  Plaintiff's Motion to Compel Discovery [43] is **DENIED as moot**.  Finally, Defendant's Motion to Quash Subpoena to Arch Chemicals, Inc. [47] is **DENIED as moot**.  The Clerk is directed to enter judgment in favor of Defendant and to close the case.

        **SO ORDERED**, this   19th   day of February, 2013.


_____

**RICHARD W. STORY**
United States District Judge

16